## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID L. FISH, JR.,** | : | |
| | : | **Case No. 2:04-cv-1187** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Magistrate Judge Norah McCann King** |
| | : | |
| | : | |
| **THE AIROLITE COMPANY, *et al*.** | : | |
| | : | |
| **Defendants.** | : | |

### OPINION AND ORDER

This is an employment action in which David L. Fish, Jr. ("plaintiff") alleges that his

employer, the Airolite Company ("company"), discriminated against him based on his disability

in violation of Ohio law and wrongfully terminated his employee benefits, thereby breaching its

fiduciary duty under the Employee Retirement Income Security Act, 19 U.S.C. §1001, *et seq*.

Additionally, plaintiff claims that the United Steelworkers of America, AFL-CIO Local 3241

("union"), of which he was a bargained-for member during his employment with the company,

acted in breach of its duty of fair representation to him, giving rise to a hybrid action under

Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

With the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on the

*Defendant United Steelworkers Local 3241's Motion to Dismiss or in the Alternative for*

*Judgment on the Pleadings* ("*Union's Motion to Dismiss*"), in which it argues that plaintiff has

failed to state a claim against it upon which relief can be granted. Doc. No. 9. For the reasons

that follow, the Court concludes that further briefing by the parties is necessary to resolve the

*Union's Motion to Dismiss*.  The union and plaintiff are given twenty (20) days to supplement

their memoranda in accordance with this *Opinion and Order*.

## I.    RELEVANT FACTS

Plaintiff was employed by the company during 2000.  *Complaint*, at ¶¶ 1, 4.  Plaintiff's

employment was governed by the terms of a collective bargaining agreement ("contract")

entered into between the company and the union.  *Id.*, at ¶¶ 1, 3.

In late February or early March 2000, plaintiff suffered an injury to his right ankle that

rendered him unable to work.  *Id.*, at ¶ 4.  Plaintiff underwent surgery for his injury and was

under medical supervision for approximately three (3) months.  *Id.*, at ¶ 5.  Plaintiff received a

medical leave of absence from his employment pursuant to a "Disability Certificate" signed by

his treating physician.  *Id.*, at ¶ 6.  This certificate excused plaintiff from work from March 3,

2000 to June 5, 2000.  *Id.*

On June 5, 2000, plaintiff's treating physician signed another Disability Certificate which

extended plaintiff's excused medical leave of absence to June 17, 2000.  *Id.*, at ¶ 7.  On June 5,

2000, plaintiff did not report to work.  *Id.*, at ¶ 9.  On June 7, 2000, the company terminated

plaintiff's employee seniority status and cancelled his employee benefit plan.  *Id.*, at ¶¶ 11, 14.

The company did so under section V, paragraph 61 of the contract which provides that the

seniority of an employee shall be terminated for, *inter alia*, "[a]bsence for three consecutive days

due to illness without substantiation from the attending physician within three working days."

*Id.*, at ¶ 10 and *Exhibit A* attached thereto.  Plaintiff has not returned to work since June 7, 2000.

*Id.*, at ¶ 62(a).

On June 8, 2000, the company received the Disability Certificate from plaintiff's treating

physician, which extended his leave to June 17, 2000.  *Id.*, at ¶ 12.

Plaintiff recognizes that he was terminated, since he has not been permitted to return to work since June 7, 2000; however, plaintiff claims that his termination was not "proper."  *Id.*, at ¶¶ 16, 21, 58.  Plaintiff concedes that the company terminated his seniority status under section V, paragraph 61 of the contract, but he argues that this provision does not address or authorize the termination of his status as an employee.  Rather, plaintiff contends that the contract requires a different process and procedure to properly terminate a bargained-for employee.  *Id.*, at ¶ 11.

Plaintiff alleges that the union "refused to carry out the grievance procedures as set forth in the [contract] as they were required to do as Plaintiff was not properly terminated by Defendant Airolite."  *Id.*, at ¶ 16.  Plaintiff also alleges that, "[a]fter Plaintiff's termination, Plaintiff's Union did follow the initial procedures for grievances in requesting reinstatement for Plaintiff.  At each step of the grievance procedure Defendant Airolite denied the same."  *Id.*, at ¶ 58.  Plaintiff therefore concludes that "Defendant Union has failed in its duty to fairly represent the Plaintiff in that no arbitration has been requested or filed for."  *Id.*, at ¶ 61.

Plaintiff filed an action against the company in the Court of Common Pleas of Washington County, Ohio, on June 2, 2002. *Id.*, at ¶ 17;  *Exhibit A*:  *David L. Fisher, Jr. v. The Airolite Company*, Case NO. 02 OT 144 ("state court case"), attached to *United Steelworkers Local 3241's Reply to Plaintiff's Memorandum Contra to its Motion to Dismiss* ("*Union's Reply Brief*").  The union was not a named defendant in that action, nor did plaintiff allege any wrongdoing against the union in that action.  *Id.*  The state court case was dismissed upon plaintiff's own motion on December 15, 2003.  *Complaint*, at ¶ 17.  Plaintiff filed this action on December 14, 2004.

On July 26, 2005, the union filed the *Union's Motion to Dismiss* for failure to state a claim against it upon which relief can be granted. Doc. No. 9. That motion is now ripe for review.

## II.    STANDARD OF REVIEW

The union moves for dismissal from this action, contending that the complaint fails to state a claim against it upon which relief can be granted.[1] A motion to dismiss under Rule 12(b)(6) for failure to state a claim attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). A claim will be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Thus, this Court will grant a motion to dismiss under Rule 12(b)(6) if the complaint is without merit because of an absence of facts or law to support the claims in it, or if on the face of the complaint there is an insurmountable bar to relief. *See generally, Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir. 1978).

Additionally, as a general rule "[m]atters outside of the pleadings are not to be

---

[1]The union asks, alternatively, that it be dismissed under Rule 12(c) of the Federal Rules of Civil Procedure, which applies after the pleadings are closed. Since the union has not yet filed an answer to plaintiff's complaint, Rule 12(b)(6) is the appropriate rule under which the motion will be considered.

considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). A certain amount of flexibility attends the determination of whether a matter falls "outside the pleading[s]." *Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001). In addition, the United States Court of Appeals for the Sixth Circuit has "taken a liberal view of what falls within the pleadings for purposes of Rule 12(b)(6)." *Id.* Hence, documents attached to a motion to dismiss "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's] claim." *Weiner*, 108 F.3d at 89; *McGee v. Simon & Schuster Inc*., 154 F. Supp.2d 1308, 1311 fn.3 (S.D. Ohio 2001). If extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment. *Yeary v. Goodwill Indus.-Knoxville, Inc*., 107 F.3d 443, 445 (6th Cir. 1997); *see also Delahunt v. Cytodyne Technologies*, 241 F. Supp.2d 827, 831-32 (S.D. Ohio 2003).

## III.    ANALYSIS

In the instant case, both the union and plaintiff attach documents to their memoranda. Specifically, the parties attach sections of the contract and attach the state court action that plaintiff previously filed against the company. These documents are specifically referred to in the *Complaint* and are central to plaintiff's claims. *Complaint*, at ¶¶ 3, 10, 11, 15, 16, 17, 33, 34, 35, 57, 58, 60, 61 and 62. Thus, the Court concludes that the documents attached to the union's and the plaintiff's memoranda are to be considered part of the pleadings, which the Court will consider without converting the union's motion to one for summary judgment. *See Yeary*, 107 F.3d at 445.

In the *Union's Motion to Dismiss*, the union asks the Court to dismiss it from this action

5

because of insufficiency of service of process, because the union is defunct and because the

claim against it is barred by the applicable statute of limitations.  Doc. No. 9.  However, in the

*Union's Reply Brief*, the union "elects to rely for the purpose of [the *Union's Motion to Dismiss*]

solely on the Plaintiff's claim being time barred."   The union contends that plaintiff's hybrid

Section 301 claim is barred by a six (6) month statute of limitations.  *See Del Costello v.*

*Teamsters*, 436 U.S. 151 (1983).  Plaintiff agrees that his Section 301 claim against the union is

governed by a six month statute of limitations.  The parties disagree, however, as to when the

limitations period began to run.

Plaintiff asserts, without pointing to any authority for the proposition, that "[t]he statute

of limitations does not begin to run until Defendant Union's failure to adequately represent

Plaintiff results in Plaintiff's official termination of employment."  *Plaintiff's Memorandum*

*Contra Defendant United Steelworkers Local 3241's Motion to Dismiss or in the Alternative for*

*Judgment on the Pleadings*, at 3.  The Court disagrees.

Under Section 301 of the LMRA, employees may bring a hybrid cause of action against

their unions for breach of the duty of fair representation and against their employers for breach

of a collective bargaining agreement.  *Vaca v. Sipes*, 386 U.S. 171, 185-88 (1967);  *Bagsby v.*

*Lewis Brothers, Inc*., 820 F.2d 799, 801 (6th Cir. 1987) .

> Such a suit, as a formal matter, comprises two causes of action.  The suit against
> the employer rests on § 301, since the employee is alleging a breach of the
> collective-bargaining agreement.  The suit against the union is one for breach of
> the union's duty of fair representation, which is implied under the scheme of the
> National Labor Relations Act.  "Yet the two claims are inextricably
> interdependent.  'To prevail against either the company or the Union, . . .
> [employee-plaintiffs] must not only show that their discharge was contrary to the
> contract but must also carry the burden of demonstrating breach of duty by the
> Union.'"

*Del Costello*, 462 U.S. at 151, 164-65 (1983) (internal citations omitted).

A Section 301 "claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Garrish v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 417 F.3d 590, 593 (6th Cir. 2005) (citing *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996)). "'[T]he determination of the accrual date is an objective one: the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *Id.* (citing *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994). Plaintiffs must initiate a hybrid Section 301 claim when they reasonably should know that the "'union has abandoned their claim.'" *Id.* (citing *Wilson*, 83 F.3d at 757).

In the case *sub judice*, plaintiff filed the *Complaint* in this action on December 14, 2004; accordingly, it was timely filed only if his Section 301 claim accrued after June 14, 2004. If plaintiff's Section 301 claim accrued before then, his action is time-barred unless he did not discover, or could not have discovered through the exercise of due diligence, that the union had abandoned his grievance prior to June 14, 2004.[2]

Plaintiff's seniority status as well as his employee benefits were terminated on June 7, 2000, and plaintiff has not been permitted to work since then. *Complaint*, at ¶¶ 10, 12. Additionally, it is not disputed that the union initiated the grievance process requesting that

---

[2]Of course, the Court at this juncture makes no determination as to the merits of plaintiff's claim that the union's abandonment of his grievance constitutes a breach of the duty of fair representation. *See Vaca v. Sipes*, 386 U.S. at 190 (A union breaches its duty of fair representation "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.").

plaintiff be reinstated and, at each step of the procedure, the company denied the grievance. *Id.*, at ¶ 58. Moreover, the union did not pursue plaintiff's grievance to arbitration. *Id.*, at ¶ 61. Based on these facts, the Court concludes that a reasonable person, exercising due diligence, would have known that the alleged breach of duty by the union occurred when the union refused to arbitrate plaintiff's alleged improper termination or at least when the time to file an arbitration under the contract had expired. However, those dates are unknown to the Court.

Neither the union nor plaintiff has informed the Court of the date that the company refused to arbitrate plaintiff's grievance. Moreover, the Court has been provided no documentation related to the date of the company's step four denial of plaintiff's grievance so that the Court could determine the date that the arbitration could no longer be brought, *i.e.*, thirty-one days after the denial.[3] The union asserts that plaintiff must have known about its alleged breach of the duty of fair representation at latest on the date that he filed the state court action against the company. *Union's Reply Brief*, at 4-5. The union's argument, however, misses the mark. Simply because plaintiff believes that he was wrongfully terminated by the company on a certain date sheds no light on the question of when the union abandoned his grievance related to the termination.

**WHEREUPON**, in light of the foregoing analysis, the Court **DIRECTS** plaintiff and the union to supplement their memoranda related to the *Union's Motion to Dismiss* in accordance

---

[3]The grievance procedure is set out in the contract. *Complaint*, at ¶ 15. Section VII, paragraph 81, requires an arbitration to be filed no later than thirty-one (31) days after the step four denial of the grievance. *Exhibit B*, attached to the *Union's Reply*.

8

with this *Opinion and Order*.  The parties are given twenty (20) days from the date of this

*Opinion and Order* to so supplement.


December 15, 2005                    _s/Norah McCann King_
Date                                        Norah M$^c$Cann King
                                               United States Magistrate Judge

9